UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.G. CROSTHWAITE, *et al.* | No. C-11-2632 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| JORGE EDGARD QUINONES, | |
| Defendant. | **(Docket No. 31)** |

Plaintiffs are a local union (Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO) and the trustees for the following trust funds: the Operating Engineers' Health and Welfare Trust Fund; the Pension Trust Fund for Operating Engineers; and the Pensioned Operating Engineers' Health and Welfare Fund (collectively, the "Trust Funds"). They have filed suit against Defendant Jorge Edgard Quinones, doing business as Professional Construction Services ("PCS") (also known as PCS Construction). Plaintiffs allege that Mr. Quinones failed to make contributions to the Trust Funds as required by the agreement entered into by Mr. Quinones and the union. Currently pending before the Court is Plaintiffs' motion for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The following facts are undisputed by the parties.

///

1  The Trust Funds are employee benefit plans as defined in 29 U.S.C. § 1002 and
2  multiemployer plans as defined in 29 U.S.C. §§ 1002(37) and 1301(a)(3). *See* Stafford Decl. ¶ 2.
3  Mr. Quinones is an employer within the meaning of 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2).
4  *See* Stafford Decl. ¶ 3.

5  Mr. Quinones, doing business as PCS, entered into an agreement with the local union on or
6  about December 15, 2009. *See* Hayner Decl., Ex. A (Organizing Agreement Letter of
7  Understanding). Pursuant to that contract, the parties agreed that the terms and conditions of their
8  agreement would be "those set forth in the 2006-2010 Master Agreement for Northern California . . .
9  between Engineering & Utility Contractors Association . . . and [the union] . . . , and any and all
10 modifications thereto and extensions thereof except for the following organizing agreement
11 conditions." Hayner Decl., Ex. A (Organizing Agreement Letter of Understanding).

12 Under the relevant Master Agreements, an employer is required to make contributions to the
13 Trust Funds "for each hour worked or paid each Employee by an Individual Employer covered by
14 this Agreement." Hayner Decl., Ex. C (2006-2010 Master Agreement § 12.01.00 and 2010-2013
15 Master Agreement § 12.01.00). In addition, an employer agrees to be bound by the Trust
16 Agreements for the Trust Funds. *See* Hayner Decl., Ex. C (2006-2010 Master Agreement § 12.01.00
17 and 2010-2013 Master Agreement § 12.01.03). The Trust Agreements provide that an employer
18 may be required to submit to an audit. *See* Hayner Decl., Ex. E (representative Trust Agreement,
19 art. IV, § 6); *see also* Hayner Decl., Ex. C (2010-2013 Master Agreement § 12.01.04).

20 If an employer fails to make contributions in full and within the proper timeframe, then the
21 Master Agreements provide that an employer is obligated to pay liquidated damages, interest, and
22 fees.

23 *Liquidated damages.* The 2006-2010 Master Agreement allows for liquidated damages
24 either in "the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and
25 unpaid to each such Trust, whichever is greater." Hayner Decl., Ex. C (2006-2010 Master
26 Agreement § 12.13.00). The 2010-2013 Master Agreement allows for liquidated damages in the
27 amount of "10% of the unpaid contributions as of the delinquent date," except that such damages
28 shall be increased to "the greater of 20% of the unpaid contributions, or interest on the amount of the

unpaid contributions from the delinquent date until the dates they are paid in full" if "a lawsuit to collect delinquent contributions has been filed." Hayner Decl., Ex. C (2010-2013 Master Agreement § 12.13.01); *see also* Hayner Decl. ¶ 7 & Ex. D (excerpt from representative Trust Agreement containing same liquidated damages provision).

*Interest.* The 2006-2010 Master Agreement provides for "interest at the rate of twelve percent (12%) per annum until paid." Hayner Decl., Ex. C (2006-2010 Master Agreement § 12.13.00). The 2010-2013 Master Agreement provides for "10% per year simple interest." Hayner Decl., Ex. C (2010-2013 Master Agreement § 12.13.02).

*Fees.* The relevant Master Agreements both specify that,

> [i]f any Individual Employer defaults in the making of such payments and if either the Union, the Trusts or the Plan, or any of them, consults or causes to be consulted legal counsel with respect thereto, or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Union and the Trust in the collection of the same, including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim including any appellate proceedings therein.

Hayner Decl., Ex. C (2006-2010 Master Agreement § 12.13.02 and 2010-2013 Master Agreement § 12.13.06).

While the above facts are undisputed, there do appear to be certain disputes between the parties. For example, Plaintiffs are seeking unpaid contributions (and related liquidated damages and interest) starting from December 2009 to at least April 2012. Plaintiffs conducted an audit for part of that period – *i.e.*, from December 15, 2009, through December 31, 2010. *See* Bradley Decl. ¶ 2. Mr. Quinones challenges certain conclusions in that audit. As another example, for the months of March and/or April 2012, Mr. Quinones objects to Plaintiffs' estimate of what unpaid contributions would be.

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim.  *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992).

B.  Audit

As indicated by his papers, Mr. Quinones's main argument in opposition to Plaintiffs' motion for summary judgment consists of a challenge to the audit that Plaintiffs had conducted for the period December 15, 2009, through December 31, 2010.  With respect to the audit, Mr. Quinones makes both a broad objection as well as very specific objections.

The broad objection is an objection to the declaration from the auditing firm (*i.e.*, the Bradley declaration).  More specifically, Mr. Quinones argues that the declaration should be rejected because it was not issued by the person who actually conducted the audit but rather a supervisor.  According to Mr. Quinones, the supervisor lacks personal knowledge to make any conclusions about the audit, including but not limited to how much time was actually spent by the auditor on completing the audit.  The Court rejects this argument.  In the declaration, the supervisor states that she supervised all of the work that was done on the audit.  *See* Bradley Decl. ¶ 3.  That is enough to establish the necessary personal knowledge.

As for specific objections to the audit, Mr. Quinones has argued the following.

///

///

1. <u>Michael Decremer</u>

Mr. Quinones claims that Mr. Decremer was not dispatched from the union until May 5, 2010, and "first worked for [him] on May 10, 2010." Quinones Decl. ¶ 2. Thus, he challenges the auditing firm's conclusion that Mr. Decremer did work for him from January to May 2010. *See* Bradley Decl., Ex. A at 3 (audit).

In response, Plaintiffs point to evidence that contradicts Mr. Quinones's declaration. More specifically, according to the auditing firm hired by Plaintiffs, it concluded that Mr. Decremer did work for Mr. Quinones during the January to April 2010 time frame based on documentation provided by Mr. Quinones himself during the audit. The auditing firm admits that Mr. Quinones did not provide weekly payroll records for the period January to April 2010. However, because Mr. Quinones was able to provide the yearly wage summaries for January to December 2010 *plus* weekly payroll records for the period May to December 2010, the auditing firm was able to figure out that Mr. Decremer did work for Mr. Quinones during the January to April 2010 timeframe.

The basic question for the Court is whether Mr. Quinones's declaration should, in essence, be rejected as a sham because it appears to contradict the documentary evidence – notably, documentary evidence that he himself gave to Plaintiffs. In resolving this question, the Court takes guidance from the Ninth Circuit law which provides that "'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The Ninth Circuit has stated that this rule – *i.e.*, the sham affidavit rule – "'should be applied with caution'" and has expressly

> fashioned two important limitations on a district court's discretion to invoke the . . . rule. First, we have made clear that the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony"; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. Thus, "the nonmoving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit."

*Id.* at 998-99.

Here, even proceeding with caution, the Court concludes that Mr. Quinones's declaration is a sham, at least with respect to the testimony related to Mr. Decremer. The Court makes this finding not simply because there is a clear contradiction between Mr. Quinones's own documentary evidence and his declaration but because, in his declaration, Mr. Quinones makes no attempt to explain why his own documentary evidence is flawed. *See, e.g.*, *Morgan v. Bend-La Pine Sch. Dist.*, No. CV-07-173-ST, 2009 U.S. Dist. LEXIS 9443, at *20-21 n.13 (D. Or. Feb. 6, 2009) (disregarding plaintiff's declaration as sham evidence because her declaration directly contradicted prior testimony and she offered no explanation for the change in testimony); *Player v. Salas*, No. 04cv1761-LAB (WMc), 2007 U.S. Dist. LEXIS 70144, at *14-17 (S.D. Cal. Sept. 21, 2007) (same).

2. <u>Anthony Holtry and James Rowley</u>

According to the auditing firm, Mr. Holtry worked 72 hours and Mr. Rowley worked 139 hours for Mr. Quinones during April 2010. *See* Bradley Decl., Ex. A at 3 (audit). Mr. Quinones argues that he and the union entered into a settlement agreement in December 2010 which resolved this dispute. *See* Quinones Decl. ¶ 3 & Ex. B (settlement agreement).

While Plaintiffs point to potential problems with this argument – *e.g.*, the settlement agreement, although signed by the union, is not signed by Mr. Quinones and does not specifically state that it covers the month of April 2010 – Mr. Quinones has put forward enough evidence here to create a genuine dispute of material fact. Although his signature is not on the agreement, the union's signature clearly is. Moreover, it is plausible that the April 2010 period is covered given that the agreement was signed in December 2010. To the extent Plaintiffs made additional arguments at the hearing – *i.e.*, that a non-union company may have hired Mr. Holtry and Mr. Rowley but the work they performed was actually for Mr. Quinones – that still does nothing to obviate the genuine dispute of material fact.

3. <u>Leo Lemanski</u>

The auditing firm concluded that Mr. Lemanski actually worked 106.75 hours for Mr. Quinones in October 2010, and not 32.25 hours as reported by Mr. Quinones. *See* Bradley Decl., Ex. A at 3 (audit). In his papers, Mr. Quinones argues that, based on the dispatch/reporting date of

October 14, 2010, Mr. Lemanski actually worked only 49.75 hours in October 2010 (*i.e.*, the 32.25 hours originally reported for the week ending October 30, 2010, plus 4.50 hours for the week ending October 16, 2010, and 13.00 hours for the week ending October 23, 2010).  *See* Quinones Decl. ¶ 4 & Ex. D (timesheets).

Here, the Court does not find Mr. Quinones's declaration testimony to be a sham.  Although the audit was based on Mr. Quinones's own documentary evidence, Mr. Quinones has provided concrete evidence (not just a naked claim) to support his position that, in essence, the audit was incorrect.  While the trier of fact may not ultimately agree with Mr. Quinones as the dispatch records may not be dispositive, he has provided sufficient evidence to defeat summary judgment.

4. <u>Danny Lenzi</u>

According to the audit report, Mr. Lenzi worked for Mr. Quinones for 72.50 hours in December 2010.  *See* Bradley Decl., Ex. A at 4 (audit).  In his opposition, Mr. Quinones declares that Mr. Lenzi did not work for him in December 2010; rather, Mr. Lenzi worked for a completely different company (Diversified Concrete Cutting) during that month.  Mr. Quinones adds that, while Mr. Lenzi did work for him from November 2009 to April 2010, that work was done in Southern California and he made the requisite contributions to the union that dispatched Mr. Lenzi (Local No. 12).  *See* Quinones Decl. ¶ 5.

In their reply, Plaintiffs admit that Mr. Lenzi may not actually have worked for Mr. Quinones in December 2010.  However, they contend, based on the audit, that Mr. Lenzi worked for Mr. Quinones at some point in 2010.  The yearly wage summaries that Mr. Quinones provided during the audit showed that Mr. Lenzi did some work for Mr. Quinones during that period; the auditing firm simply included those hours "under 'December' (end of the year) rather than try to divide the hours by month."  Bradley Reply Decl. ¶ 8.

Here, the Court concludes that Mr. Quinones raised a genuine dispute of material fact because, even though the documentation that he gave to the auditors showed that Mr. Lenzi did some work for him in, it is possible that that work was done in Southern California (consistent with Mr. Quinones's declaration).

///

5. <u>Summary</u>

The Court rejects Mr. Quinones's general objection to the audit but concludes that some of the specific objections have merit – *i.e.*, Mr. Quinones has raised a genuine dispute of material fact with respect to Mr. Holtry, Mr. Rowley, Mr. Lemanski, and Mr. Lenzi.

To the extent Plaintiffs ask that the Court award partial summary judgment or summary adjudication on the undisputed amounts due under the audit, plus the amounts due based on the work done by Mr. Decremer, the Court will do so but Plaintiffs have not provided calculations showing what contributions (and related liquidated damages and interest) would be due excluding the controverted work done by Mr. Holtry, Mr. Rowley, Mr. Lemanski, and Mr. Lenzi.[1]  Accordingly, the Court grants Plaintiffs partial summary judgment or summary adjudication on the undisputed amounts due under the audit, plus the amounts due based on the work done by Mr. Decremer, but defers a final ruling on related damages until Plaintiffs provide new calculations.  Plaintiffs shall provide new calculations (and any explanation in support thereof) within two weeks of the date of this order.  Within one week thereafter, Mr. Quinones may file a responsive brief.

C. <u>Policy of Estimating Unpaid Contributions</u>

Aside from the audit – which covers only the December 15, 2009, to December 31, 2010, timeframe – Mr. Quinones makes only one additional substantive challenge to Plaintiffs' motion for summary judgment.  More specifically, he contests Plaintiffs' estimate of what contributions were due for the month of March 2012.

In their reply brief, Plaintiffs explain that they had to estimate what was due because Mr. Quinones had not provided a contribution report for that month.  Plaintiffs subsequently received a copy of the contribution report for March 2012 and have now adjusted their request for damages (unpaid contributions, liquidated damages, etc.) based on the hours reported.  *See* Reply at 9.

While this may resolve the dispute over March 2012, Plaintiffs are now asking (given the passage of time) for contributions owed for April 2012 – and here Plaintiffs are once again

---

[1] Plaintiffs did submit a supplemental declaration providing calculations excluding the work done by Mr. Holtry, Mr. Rowley, and Mr. Lenzi.  *See generally* Stafford Supp. Decl.  The Court, however, now concludes that summary judgment with respect to the work done by Mr. Lemanski is also inappropriate.

8

estimating the contributions owed. Thus, presumably, Mr. Quinones will make the same argument for April 2012 as he previously did for March 2012.

It is the policy of the Trust Funds to estimate contributions owed "based on the average of the last three months reported." Hayner Decl. ¶ 10. Mr. Quinones argues that, even if he did not submit a report for April 2012, Plaintiffs should first have taken some discovery to calculate what calculations were actually due before resorting to an estimate. *See* Opp'n at 6. This is a fair argument. On the other hand, if Mr. Quinones admits or Plaintiffs otherwise establish that *some* covered work was performed in April 2012, then the burden should shift to Mr. Quinones to prove the exact amount of damages or Plaintiffs' estimate should be given weight as not unreasonable. *See Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 389 F.2d 1333, 1338-39 (9th Cir. 1988) (stating that, "once the Trust Funds proved the fact of damage and Industrial's failure to keep adequate records, the burden shifted to Industrial to come forward with evidence of the extent of covered work performed by the 35 Harris employees"); *see also Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1065 (9th Cir. 2001) (stating that "*Brick Masons* establishes that a trustee in an ERISA contribution case can make a showing that will shift the burden to the employer to come forward with evidence of the precise amount of covered work performed by its employees").

Taking into account the above, the Court grants Plaintiffs partial summary judgment or summary adjudication for the period January 2011 through March 2012 (with the March 2012 contributions being based on the contribution report submitted by Mr. Quinones). However, as above, the Court defers a final ruling on related damages until Plaintiffs provide new calculations. The same timeframe as above shall apply for Plaintiffs to provide the new calculations. There remains a genuine dispute of material fact as to contributions (as well as liquidated damages, interest, etc.) for April 2012.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion. Plaintiffs are entitled to partial summary judgment or summary adjudication (1) for the period covered by the audit, *except* as to the work performed by Mr. Holtry, Mr. Rowley, Mr. Lemanski,

and Mr. Lenzi and (2) for the period January 2011 through March 2012 (but not April 2012). Plaintiffs shall provide new calculations (and any explanation in support thereof) within two weeks of the date of this order, and Defendants shall thereafter have one week to file a responsive brief. To the extent Plaintiffs have asked for an award of attorney's fees, that request is denied without prejudice as the Court is not at this juncture granting summary judgment in its entirety.

Finally, at the time that Plaintiffs provide their new calculations, the Court also orders Plaintiffs to file a statement as to whether they intend to litigate the remainder of the case, *i.e.*, that part of the case which the Court denied summary judgment. *See* Stafford Supp. Decl. ¶ 3 (indicating that Plaintiffs would not pursue the case if the Court excluded only those amounts related to Mr. Holtry, Mr. Rowley, and Mr. Lenzi).

This order disposes of Docket No. 31.

IT IS SO ORDERED.

Dated: July 2, 2012

_____
EDWARD M. CHEN
United States District Judge